IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CLARA M. COLLINS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| PORTFOLIO RECOVERY ) | |
| ASSOCIATES, LLC, RETHA GRAY, ) | |
| and MCLEMORE & EDINGTON, ) | Jury Trial Demanded |
| PLLC, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' numerous and multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides here.

**PARTIES**

4. Plaintiff Clara M. Collins (hereinafter "Plaintiff") is a natural person who resides in Hamblen County, Tennessee, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Portfolio Recovery Associates, LLC (hereinafter "Defendant Portfolio Recovery") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Virginia, that maintains National Registered Agents, Inc., 2300 Hillsboro Road, Ste. 305, Nashville, TN 37212-4927, as its registered agent for service of process.

6. Defendant Retha Gray (hereinafter "Defendant Gray") is a natural person who is an employee and/or agent of Defendant Portfolio Recovery, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served at her business address of 120 Corporate Blvd., Suite 100, Norfolk, VA, 23502-4962, or her home address.

7. Defendant McLemore & Edington, PLLC (hereinafter "Defendant McLemore & Edington") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served through its agent for service of process as follows: Paul E. McLemore, 9051 Executive Park Dr., Suite 500, Knoxville, TN 37923-4632.

## FACTUAL ALLEGATIONS

8. Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt allegedly originally owed to or serviced by Capital One Bank, N.A (hereinafter "Capital One")

9. After default, and sometime prior to February 1, 2011, Plaintiff's debt was consigned, sold or otherwise transferred to Defendants for collection from Plaintiff.

10. Defendant Portfolio Recovery is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

11. When purchasing charged-off consumer debts, Defendant Portfolio Recovery makes an intentional business decision not to obtain competent evidence as to whether a written contract existed between the original creditor of the debt and the consumer, or if there was other documentation showing when or how the debt was incurred, or anything beyond very rudimentary information which would allow them to correctly calculate the amount of debt owed by a consumer (i.e., name, last known address, telephone number, social security number, amount due, name of original creditor, original account number, and current owner of the debt).

12. The lack of documentation that debt buyers such as Defendant Portfolio Recovery receive when they purchase the charged-off debt is reflected in the price of the debt, sometimes a little as a penny or two on the dollar.

13. The usual way Defendant Portfolio Recovery collects the charged-off consumer debts is to employ debt collection attorneys such as Defendant McLemore & Edington to file collection lawsuits, providing them only sworn affidavits as evidence of the alleged debt.

14. The business model followed by Defendant Portfolio Recovery and Defendant McLemore & Edington to collect debts from Tennessee consumers is to engage in a "pattern and practice" of filing collection lawsuits: (1) after making intentional business decisions not to obtain competent evidence, including, but not limited to a copy of a written contract between the original creditor and the consumer, (2) prior to reasonably and adequately investigating whether a consumer owes the amount of debt they are attempting to collect, or owes the debt at all, (3) while using sworn affidavits that

knowingly contain false, deceptive, and misleading statements made by persons who do not possess the information or ability to make a sworn affidavit as to the correctness of the amount owed, and (4) with the improper motive of obtaining default judgments against 95% or more of the consumers who are intimidated by the sworn affidavits because they are made in the course of litigation and under penalty of perjury, in order to increase their respective financial bottom lines.

15. Defendant Portfolio Recovery and Defendant McLemore & Edington file the collection lawsuits against Tennessee consumers, knowing they do not have the means and do not intend to obtain the means of proving the alleged debt.

16. In a majority of the cases, debt buyers such as Defendant Portfolio Recovery and debt collection attorneys such as Defendant McLemore & Edington obtain a default judgment and the sufficiency of the debt buyer's sworn affidavits are not challenged.

17. In those few instances where a consumer has the means and ability to defend the collection lawsuit, debt buyers such as Defendant Portfolio Recovery and debt collection attorneys such as Defendant McLemore & Edington will dismiss the case rather than risk having their systemic fraud on the court exposed.

18. When Defendant Portfolio Recovery purchased Plaintiff's alleged debt, it intentionally chose not to obtain any documents which: (1) could be used as competent evidence in a court of law to show that Plaintiff had entered into a contract with any entity creating the debt, (2) show how the amount claimed as owed was calculated, (3) show when the debt went into default, and (4) show what acts by Plaintiff caused a default, and they did not possess such documents when collection lawsuit was filed against Plaintiff.

### April 8, 2011 Collection Lawsuit

19. Within one year prior to the filing of this Complaint, on or about April 8, 2011, Defendants filed a Civil Summons and sworn Affidavit against Plaintiff in state court (collectively the "collection lawsuit"). ***A copy of the April 8, 2011 collection lawsuit is filed as Exhibit 1 to this Complaint.***

20. The Civil Summons and sworn Affidavit were served on Plaintiff in connection with collection of a debt and in an attempt to collect a debt, and each is a "communication" as defined by 15 U.S.C. § 1692a(2).

21. Despite the fact that Defendants possessed no competent evidence showing that Plaintiff owed the alleged debt, and prior to making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they alleged or owed the debt at all, Defendant Portfolio Recovery and Defendant McLemore & Edington filed suit against Plaintiff seeking to collect: "For goods, services, arbitration award or monies advanced or loaned to Defendants for which payment has not been received as evidenced by the sworn account attached hereto in the sum of $1,057.58, plus interest at rate of 10% APR & the costs of this action." ***See Doc. 1-1, p. 1.***

22. The collection lawsuit filed against Plaintiff was based solely on a sworn account, which claim was defective because it was knowingly based on false, deceptive, and misleading statements in the sworn Affidavit filed with the Civil Summons that were intended to deceive the state court and Plaintiff.

23. On May 13, 2011, Plaintiff filed a Sworn Denial in the collection lawsuit stating that Plaintiff had not entered into any agreement with Defendant Portfolio Recovery for the repayment of debt or otherwise.

24. Without a written contract signed by Plaintiff, the Defendants may not recover attorney's fees or a contract rate of interest on the underlying debt. *Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. Ct. App. 2008) (perm. app. den. Sup. Ct., December 15, 2008)).

*Use of Civil Summons That Contained False, Deceptive and Misleading Statements in Connection With Collection of the Alleged Debt*

25. The demand in the Civil Summons that Plaintiff owes "$1,057.58, plus interest at rate of 10% APR", was for an amount not expressly authorized by the agreement creating the debt or permitted by law.

26. Defendant Portfolio Recovery and Defendant McLemore & Edington made an intentional business decision to file the collection lawsuit against Plaintiff prior to: (1) obtaining competent evidence, including a copy of a written contract between the original creditor and Plaintiff, or other documentation showing when or how the debt was incurred, or (2) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, or owed the debt at all.

27. By making a business decision to intentionally not obtain competent evidence, including, but not limited to a copy of a written contract between the original creditor and Plaintiff, or make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect prior to filing the collection lawsuit, Defendant Portfolio Recovery and Defendant McLemore & Edington used deceptive and misleading representations or means in connection with collection of the alleged debt.

28. By using deceptive and misleading representations or means in connection with collection of the alleged debt by stating in the Civil Summons that Defendant Portfolio Recovery was entitled to an amount not expressly authorized by the agreement creating the debt or permitted by law, without knowledge of whether a written contract existed,

Defendant Portfolio Recovery and Defendant McLemore & Edington falsely represented the character, amount and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), used false, deceptive, and misleading representations or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and used unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

29. By filing the Civil Summons which contained deceptive and misleading representations in connection with collection of the debt while unreasonably relying on Capital One or an assignee of Capital One as to the amount of debt allegedly owed by Plaintiff, without knowledge of whether a written contract existed, Defendant Portfolio Recovery and Defendant McLemore & Edington communicated credit information to the State court, the general public, and the Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

30. By attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law, Defendant Portfolio Recovery and Defendant McLemore & Edington violated 15 U.S.C. § 1692f(1).

31. The statement in the Civil Summons that Plaintiff owed "$1,057.58, plus interest at rate of 10% APR" was an amount based on an intentional business decision not to obtain competent evidence, including, but not limited to a copy of a written contract between the original creditor and Plaintiff, or make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect or owed the debt at all, and was the use of deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of

the least sophisticated consumer that Defendant Portfolio Recovery and Defendant McLemore & Edington had attempted to correctly calculate the amount owed based on the terms of the contract Plaintiff allegedly had with the original creditor prior to filing the Civil Summons, when Defendant Portfolio Recovery and Defendant McLemore & Edington had intentionally made no effort to do, and the amount of debt alleged as owed was not authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

*Use of Sworn Affidavit That Contained False, Deceptive and Misleading Statements in Connection With Collection of the Alleged Debt*

32. An affidavit filed in support of a Civil Summons on a sworn account in Tennessee is filed to attest to the correctness of the amount owed. ***See, Tenn. Code Ann. § 24-5-107(a).***

33. Defendant Gray, who authored the Affidavit that was filed on April 8, 2011 in support of the Civil Summons, swore under oath in the Affidavit to the following statements:

    (1) She is a "Legal Specialist, for [Defendant Portfolio Recovery]".

    (2) "I am authorized to make the statements, representations, and averments herein, and do so based upon a review of the business records of the Account Assignee and those records transferred to Account Assignee from Capital One National Association ("Account Seller") which have become a part of and have integrated into Account Assignee's business records, in the ordinary course of business."

(3) "According to the business records, which are maintained in the ordinary course of business, the account, and proceeds of the account are now owned by the Account Assignee, all of the Account Seller's interest in such account having been sold, assigned and transferred by the Account Seller on 4/7/2009."

(4) "Further, the Account Assignee has been assigned all of the Account Seller's power and authority to do and perform all acts necessary for the settlement, satisfaction, compromise, collection, or adjustment of said account, and the Account Seller has retained no further interest in said account or the proceeds thereof, for any purpose whatsoever."

(5) "According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from COLLINS; CLARA M [Plaintiff] to the Account Seller the sum of $1,057.58 with the respect of account number 5178052533269060 as of 4/7/2009 with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale."

> > (6) "According to the account records of said Account Assignee, after all known payments, counterclaims, and/or setoffs occurring subsequent to the date of sale, there is currently due and owing the sum of $1,057.58."
>
> (all capital letters in original) *See Doc. 1-1, p. 2.*

34. Prior to signing the Affidavit under penalty of perjury, Defendant Gray did not review records of the originator of the debt to determine if there was a contract signed by Plaintiff and, if so, whether the amount Plaintiff allegedly owed was correct, because Defendant Portfolio Recovery continued to follow its business model of not obtaining records of the originator of the debt that would have allowed Defendant Gray to do so.

35. Without records of the originator of the debt available for Defendant Gray to review prior to signing the Affidavit under penalty of perjury to determine if the amount allegedly owed by Plaintiff was correct, as required by Tennessee state law for a sworn account, it was impossible for Defendant Gray to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

36. Form affidavits, such as the one filed in the lawsuit against Plaintiff, are generated automatically by a computer owned by Defendant Portfolio Recovery upon request and routinely provided to Defendant Gray and other employees and/or agents of Defendant Portfolio Recovery who engage in robo-signing hundreds of affidavits without the information or ability to make a sworn affidavit as to the correctness of the amount owed by consumers, within the requirements of Tennessee state law.

37. The form affidavits are attached to and filed with the Civil Summons by debt collection attorneys such as Defendant McLemore & Edington.

38. The intentional use by Defendants of the form affidavit in Plaintiff's collection lawsuit that contains representations that are obviously fraudulent, and in violation of state law, is the use of false, deceptive, and misleading representations or means in connection with collection of the debt to collect, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair and unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

39. The statements made by Defendant Gray in the sworn Affidavit, including, but not limited to:

   (1) "I am authorized to make the statements, representations and averments herein, and do so based upon a review of the business records of the Account Assignee and those records transferred to Account Assignee from Capital One National Association ("Account Seller") which have become a part of and have integrated into Account Assignee's business records, in the ordinary course of business."

   (2) "According to the business records, which are maintained in the ordinary course of business . . . ."

   (3) "According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee . . . ",

were simply the regurgitation by Defendant Gray of language from the Tennessee Rules of Evidence, in an intentional attempt to mislead the State court and Plaintiff into believing that Defendant Gray was someone who had personal knowledge of the amount

of debt allegedly owed by Plaintiff and that Plaintiff, in fact, owed the debt, when it was not possible for Defendant Gray to have such personal knowledge.

40. Defendant Portfolio Recovery and Defendant McLemore & Edington intentionally use virtually identical form affidavits in the collection lawsuits filed against Tennessee consumers, alleging facts not in possession of Defendant Portfolio Recovery and to which its agents are not qualified to sign under oath due to their lack of information.

41. Defendant Portfolio Recovery and Defendant McLemore & Edington filed the collection lawsuit against Plaintiff in an attempt to collect the debt knowingly using Defendant Gray's sworn Affidavit that contained the false, deceptive and misleading language as the only evidentiary basis to support their claims.

42. Defendant Gray's demands in the sworn Affidavit for amounts not expressly authorized by the agreement creating the debt or permitted by law, without knowledge of whether a written contract existed, were false, deceptive and misleading misrepresentations made without the information or ability to make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff, as required by Tennessee law, in violation of 15 U.S.C. § 1692e(2)(A), the use of a false, deceptive, and misleading representations or means in connection with collection of the debt or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

43. By filing the collection lawsuit against Plaintiff: (1) after making business decisions to intentionally not obtain competent evidence, including, but not limited to a copy of a written contract between Capital One and Plaintiff, (2) prior to reasonably and adequately investigating whether Plaintiff owed the amount of debt they were attempting to collect,

or owed the debt at all, (3) while using a sworn affidavit signed by Defendant Gray who does not possess the information or ability to make a sworn affidavit as to the correctness of the amount owed, as required under Tennessee state law for sworn accounts, that knowingly contains false, deceptive, and misleading statements, and (4) with the improper motive of obtaining a default judgment against Plaintiff through intimidation by having Defendant Gray make the knowingly false, deceptive, and misleading statements in the affidavit in the course of litigation and under penalty of perjury, in order to increase their respective financial bottom lines, Defendant Portfolio Recovery and Defendant McLemore & Edington violated 15 U.S.C. § 1692e(5), and the threat to take any action that cannot legally be taken is the use of a false, misleading and deceptive representations or means to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

44. By filing the collection lawsuit against Plaintiff in an attempt to collect the debt with the use of an affidavit that knowingly contains false, deceptive and misleading misrepresentations made by Defendant Gray, who alleged facts not in her possession and in violation of Tennessee state law, Defendants used false, deceptive, and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendant Portfolio Recovery and Defendant McLemore & Edington had the legal right to attempt to collect the debt in the manner in which they attempted to collect it, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

45. By using false, deceptive, and misleading representations or means in connection with collection of the debt by filing the sworn Affidavit that included the knowingly false, deceptive, and misleading statements, including the amount owed of $1,057.58, Defendant Portfolio Recovery and its agents communicated credit information to the State court, the general public, and Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

46. By attempting to collect amounts in the sworn Affidavit not expressly authorized by the agreement creating the debt or permitted by law, Defendant Portfolio Recovery and Defendant McLemore & Edington violated 15 U.S.C. § 1692f(1).

47. The statement in the Affidavit that Plaintiff owed $1,057.58, after Defendant Portfolio Recovery and Defendant McLemore & Edington intentionally chose not to obtain or to have Defendant Gray review a copy of the written contract signed by Plaintiff or other evidence as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all, prior to execution of the sworn Affidavit, was the use of deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had attempted to correctly calculate the amount owed based on the terms of the contract Plaintiff allegedly had with the original creditor prior to filing the Affidavit, when Defendants had intentionally made no effort to do so, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

### *Failure To Include § 1692e(11) Language In Either Initial or Subsequent Communication - Sworn Affidavit*

48. The FDCPA states:

    "The failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).

49. The FDCPA states:

    "The failure to disclose . . . in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

50. The sworn Affidavit is a "communication" as defined by 15 U.S.C. § 1692a(2).

51. The sworn Affidavit is not a formal pleading made in connection with a legal action.

52. If the sworn Affidavit is the initial written communication by the Defendants with Plaintiff in connection with collection of the debt, then Defendants failed to disclose in the sworn Affidavit that they are attempting to collect a debt and that any information obtained will be used for that purpose, in violation of 15 U.S.C. § 1692e(11).

53. If the sworn Affidavit is a subsequent communication by the Defendants with Plaintiff in connection with collection of the debt, then Defendants failed to disclose in the sworn Affidavit that the communication is from a debt collector, in violation of 15 U.S.C. § 1692e(11).

### *Failure of Defendant McLemore & Edington to Send a Written Notice Containing Plaintiff's Right to Dispute the Debt and Obtain Other Information Within Five Days After the Initial Communication – Sworn Affidavit*

54. If the Sworn Affidavit is the initial written communication by Defendant McLemore & Edington with Plaintiff in connection with collection of the debt that is not a formal

pleading made in connection with a legal action, then none of the information listed below was contained in the Sworn Affidavit ("initial communication"), and within five days after the initial communication with Plaintiff in connection with collection of the debt that is not a formal pleading made in connection with a legal action, Plaintiff had not paid the debt, and Defendant McLemore & Edington had failed to send Plaintiff a written notice containing—

(a) A statement that unless Plaintiff, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Defendant McLemore & Edington;

(b) A statement that if Plaintiff notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, Defendant McLemore & Edington will obtain verification of the debt or a copy of a judgment against the Plaintiff and a copy of such verification or judgment will be mailed to Plaintiff by Defendant McLemore & Edington; and

(c) A statement that, upon Plaintiff's written request within the thirty-day period, Defendant McLemore & Edington will provide Plaintiff with the name and address of the original creditor, if different from the current creditor.

55. Within five days after the "initial communication" with Plaintiff in connection with collection of the debt in the form of the Sworn Affidavit, and within one year prior to the filing of the original complaint, Defendant McLemore & Edington failed to send Plaintiff a written notice containing the above rights and information, in violation of 15 U.S.C. §§ 1692g(a)(3) - (5).

*Summary*

56. The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

*Respondeat Superior Liability*

57. In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Gray and McLemore & Edington as agents for Defendant Portfolio Recovery and who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Portfolio Recovery.

58. The acts and omissions by Defendants Gray and McLemore & Edington were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Portfolio Recovery in collecting consumer debts.

59. By committing these acts and omissions against Plaintiff, Defendants Gray and McLemore & Edington were motivated to benefit their principal, Defendant Portfolio Recovery.

60. Defendant Portfolio Recovery is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by Defendant Portfolio Recovery including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

## TRIAL BY JURY

61. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 *et seq*

62. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

63. The foregoing acts and omissions of Defendants constitute multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

64. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

04/08/12                                  Respectfully submitted,

                                          **CLARA M. COLLINS**



                                          /s/      Alan C. Lee
                                          Alan C. Lee, Esq., BPR # 012700
                                          Attorney for Plaintiff
                                          P. O. Box 1357
                                          Talbott, TN 37877-1357
                                          (423) 736-0201
                                          info@alanlee.com