UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| CLARA M. COLLINS, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No. 2:12-cv-138 |
| v. | ) |
| | ) Judge Mattice |
| PORTFOLIO RECOVERY ASSOCIATES, | ) |
| LLC, RETHA GRAY, *and* MCLEMORE & | ) |
| EDINGTON, PLLC, | ) |
| | ) |
| *Defendants.* | ) |

## ORDER

Before the Court are Defendants' Motions for Summary Judgment (Docs. 38, 40), as well as Plaintiff's Motions for Extension of Time to File her Response to Defendants' Motions (Docs. 45, 47, 49, 50). Because Defendants have not objected to Plaintiff's multiple requests for extensions of time, the Court will **GRANT** Plaintiff's Motions for Extension of Time (Doc. 45, 47, 49, 50).

The Court has reviewed Defendants' Motions and supporting memoranda (Docs. 38-40), Plaintiff's Response (Doc. 51), Defendants' Reply (Doc. 53), and all accompanying evidence. For the reasons stated herein, the Court will **DENY** Defendants' Motions for Summary Judgment. (Docs. 38, 40). The Court will, for the following reasons, put the parties **ON NOTICE** that the Court intends to grant summary judgment for a nonmovant, pursuant to Fed. R. Civ. P. 56(f)(1) and that any responses by the parties to this notice must be filed **no later than Friday, June 28, 2013**. The dates currently set for the final pretrial conference and jury trial will be **CANCELLED** in light of this Order, and Plaintiff's Motion to Reschedule Trial Date (Doc. 61) will be **DENIED AS MOOT**.

### I. BACKGROUND

For the purposes of summary judgment, the Court will view the facts in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendant Portfolio Recovery Associates, LLC (hereinafter, "PRA") is a company that buys defaulted debts, also known as a "debt buyer." (Doc. 39-4 at 9-10). PRA purchases charged-off debts from creditors and then attempts to collect those debts from the consumers themselves. (*Id.* at 10). PRA attempts to collect on these accounts by directly writing and calling the consumers who owe the debts and by filing collections lawsuits against consumers. (*Id.*). PRA attempts to collect the debts that it purchases until they can no longer collect on those accounts; it does not resell the debts that it has purchased to other companies or debt buyers. (*Id.*).

Around April 8, 2011, PRA, through its collection counsel, Defendant McLemore & Edington, PLLC (hereinafter, "M&E"), filed a Civil warrant against Plaintiff in the Court of General Sessions of Hamblen County, Tennessee. (Doc. 1-1 at 1). The Warrant stated that

> [A] civil action [is] brought by <u>PORTFOLIO RECOVERY ASSOCIATES, LLC assignee of CAPITAL ONE BANK, N.A.</u> For goods, services, arbitration award or monies advanced or loaned to Defendants for which payment has not been received as evidenced by the sworn account attached hereto in the sum of <u>$1,057.58</u> plus interest at a rate of 10% APR & the costs of this action Under $25,000.00.

(*Id.*). Attached to Warrant was the Affidavit of Defendant Retha Gray, PRA's Legal Specialist. (*Id.* at 2). Gray averred that she was authorized to make statements and representations "based upon a review of the business records of [PRA] and those

records transferred to [PRA] from Capital One National Association ("Account Seller") which have become a part of and have integrated into [PRA]'s business records, in the ordinary course of business."[1] (*Id.*). Gray testified that, prior to signing the affidavit, she reviewed PRA's records regarding Plaintiff's Capital One account, including the bill of sale, the account number, and the amount of debt owed, as well as the last two account statements from the account that were provided to PRA by Capital One.[2] (Doc. 39-5 at 15-16). Gray's affidavit stated that, according to these business records, Plaintiff's account was sold and assigned to PRA on April 7, 2009. (*Id.*). She averred that the records that were transferred to PRA showed that Plaintiff owed Capital One "the sum of $1,057.58 [on her account] as of 4/7/2009 with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale. . . . [A]fter all known payments, counterclaims, and/or setoffs occurring subsequent to the date of the sale, there is currently due and owing the sum of $1,057.58." (Doc. 1-1 at 2). An Affidavit of Assignment, executed by an authorized agent of Capital One confirms, that "[t]he end balance showing on the books and records of the Seller at the time of the assignment of the account to [PRA] was $1057.58."[3] (Doc. 39-4 at 44).

---

[1] In her Declaration, Kelly Warren, Assistant Vice President of Litigation for Defendant PRA, stated that PRA received the Bill of Sale and the "Load Data" regarding Plaintiff's alleged Capitol One account on the date of closing. (Doc. 39-8 at 3). According to Warren, the Load Data is a portion of an electronic sale file which contains information for a specific account, including the accounts number, the interest rate, the debtor's personal information, the date that the account was opened, the date of the first delinquency, the charge-off date, the last payment date, the charge-off amount, the total balance, and the amount of post charge-off interest and fees. (*Id*).

[2] Gray testified that, although she did not prepare the affidavit herself, she reviewed the documentation herself before signing the affidavit that was prepared for her signature by another PRA employee. (Doc. 39-5 at 15).

[3] This affidavit was executed on July 26, 2012, after the date upon which Plaintiff commenced the instant civil action. (*See* Doc. 1; Doc. 39-4 at 44).

On May 12, 2011, Plaintiff executed a Sworn Denial in response to the Civil warrant, which was filed by her counsel the following day in the Hamblen County General Sessions Court. (Doc. 1-2 at 1). Plaintiff's Sworn Denial stated that she "ha[d] not entered into any agreement with PRA for the repayment of debt or otherwise," and that she "d[id] not believe that [she] owe[d] any money to PRA." (*Id.*). According to Plaintiff, she pays for all of her personal items using only cash or personal checks. (Doc. 39-1 at 11). She has "never had one credit card," and maintains that she did not open the defaulted Capital One credit card account that was opened using her name and personal information. (*Id.* at 11, 15). Plaintiff maintains that she did not receive any billing statements or communications from Capital One regarding the account and confirmed that she did not receive any communications from PRA or M&E prior to the filing of the civil warrant.[4] (*Id.* at 12-13). Plaintiff does not know who opened that account in her name and has no knowledge regarding the nature of the charges on the defaulted credit card account.[5] (*Id.* at 11-12). Tim Rees, PRA's Vice President of Operations, averred that PRA's records regarding the account "do not indicate the purpose for which the Account was originated or the purpose for any transactions on the Account."[6] (Doc. 39-3 at 2). On November 15, 2011, PRA dismissed the state court action against Plaintiff without prejudice. (Doc. 39-7 at 2).

---

[4] Plaintiff testified that she had never heard of PRA or M&E until she saw the civil warrant filed against her. (Doc. 39-1 at 12-13).

[5] Plaintiff's testimony suggests that she believes that she was the victim of identity theft. She indicated that her purse was stolen in 2004 and that her driver's license and Social Security card were in her purse at the time. (Doc. 39-1 at 11). Plaintiff did not file a police report regarding her stolen purse because she suspected that her purse was stolen by her ex-boyfriend, Thomas Jefferson. (*Id.* at 6, 12).

[6] PRA's Assistant Vice President of Litigation, Kelly Warren, testified that PRA "regularly" purchased consumer debts and that she believed that the company also purchased business debts. (Doc. 39-4 at 9).

Plaintiff initiated this action on April 8, 2012. (Doc. 1). In her civil complaint, Plaintiff raised a single count of "violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*" (*Id.*). However, Plaintiff raised numerous specific violations of the FDCPA, alleging that Defendants violated §§ 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), and 1692f by submitting an affidavit which falsely representing the character, amount, and legal status of the debt; by using false, deceptive, and misleading representations or means, and unfair or unconscionable means, in order to collect or attempt to collect on the debt; and by communicating credit information to the courts and the public that it knew or should have known to be false. (*Id.* at 6-14). Plaintiff also alleged that Defendants violated § 1692e(11) because they failed to disclose in their initial written communication – specifically, a sworn affidavit filed in Tennessee state court in connection with the commencement of a state court action – that they were debt collectors attempting to collect a debt. (*Id.* at 15). Plaintiff further alleges that Defendants failed to send Plaintiff a written notice within five days of the initial communication that contained all of the information required by 15 U.S.C. § 1692g(a). (*Id.* at 15-16).

Plaintiff maintains that PRA's filing of the Civil warrant was deceptive because she did not think that "they informed [her] enough to know what that was for until [she] got a lawsuit." (Doc. 39-1 at 23). Specifically, she stated that she "never got anything that [she] could recall about this until [she] got a warrant," and "they served [her] with that [warrant] and [she] didn't know what they mean by all of this – that." (*Id.*). Plaintiff also stated that PRA made an intentional business decision to fail to obtain knowledge as to whether Plaintiff had a written contract with Capital One, but when asked if she had evidence to support this claim, she stated, "All I know is they filed the

5

warrant on me without figuring out whether I did owe Capital One or not." (*Id.* at 15-16). Plaintiff believes that Gray's Affidavit was false because she "never talked to [Gray] for her to even know whether that was me or not[.]" (Doc. 39-1 at 14-15). However, Plaintiff confirmed that she did not personally know what documents Gray reviewed before signing the affidavit and that she did not have any evidence to contradict Gray's affidavit or testimony. (*Id.* at 14).

Defendants now seek summary judgment as to Plaintiff's claim that they violated various provisions of the FDCPA. (*See* Docs. 38-40).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

6

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; rather, there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Under the FDCPA, a plaintiff may bring a civil action against a debt collector who engages in "abusive debt collection practices." 15 U.S.C. §§ 1692(e), 1692k. Put succinctly, the FDCPA prohibits a debt collector from using any false, deceptive, unfair, or unconscionable means when attempting to collect a debt. *See Webb v. Asset Acceptance, LLC*, 486 F. App'x 596, 597 (6th Cir. 2012). Courts use the "least sophisticated consumer" standard when assessing whether a debt collector's conduct violates the FDCPA. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009). This is an objective standard that ensures that the FDCPA protects all consumers, "the gullible as well as the shrewd." *Id.*; *see Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011).

The parties' first disagreement is as to whether or not the alleged obligation in question qualifies as a "debt" under the statute. The FDCPA broadly defines "debt" as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Thus, the FDCPA regulates only consumer – not commercial – debts. S*ee, e.g., Broadnax v. Greene Credit Svc.*, 106 F.3d 400 (table), 1997 WL 14777, at *2 (6th Cir. Jan. 15, 1997) ("Under the FDCPA, certain abusive collection practices are actionable, but *only* where the underlying debt is a *consumer* debt.") (emphasis original); *McKamey v. Fin. Accounts Svcs. Team, Inc.*, 2010 WL 3632192, at *3-4 (E.D. Tenn. Sept. 10, 2010) ("The FDCPA . . . regulates abusive collection tactics in relation to consumer, but not commercial debts . . . ."). The parties argue at length regarding whether Plaintiff has proven that the underlying debt in this action is a "debt" for the purposes of the FDCPA,

8

as Plaintiff has disavowed any knowledge of the credit card and the charges accrued thereon, and by extension, indicates that she lacks any knowledge of whether the charges were "primarily for personal, family, or household purposes."

The Court believes that Defendants' position – that a consumer cannot pursue an FDCPA action where she alleges that she lacks knowledge of the nature of the obligation because of identity theft – is untenable. In this case, there is no evidence or suggestion that Capital One believed at the time that the account was opened (or that PRA believed that the time that it acquired the defaulted obligation) that it was extending an account for commercial debt.[7] The account in question was a consumer credit card account opened in Plaintiff's name. Although Plaintiff lacks knowledge as to the nature and purpose of the charges accrued on the account, the balance on that account nonetheless must be deemed an alleged obligation for personal, family, or household purposes. To hold otherwise would defy common sense, as it would allow debt collectors to utilize unfair collection tactics against already vulnerable individuals – that is, those who have been subject to identity theft. Accordingly, the Court finds that, where the consumer lacks knowledge of the exact nature of the charges on an account due to alleged identity theft – as is the case here – the alleged obligation on a consumer account will nonetheless constitute a "debt" for purposes of the FDCPA analysis.

The parties' next disagreement is as to whether Defendant Gray is a "debt collector" under the FDCPA. The FDCPA draws a distinction between "creditors" and "debt collectors." Under the FDCPA, a creditor is "any person who offers or extends

---

[7] Additionally, Gray's affidavit indicates that Defendants were attempting to collect a "debt" under the FDCPA, as it stated "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (Doc. 1-1 at 2). This language suggests that Defendants were aware at the time they initiated a state court action against Plaintiff that the account balance constituted a valid FDCPA debt.

credit creating a debt or to whom a debt is owed," excluding "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007) ("The term 'debt collector' has a particular meaning, however: it refers only to persons attempting to collect debts due 'another.'"). An entity that acquires a debt and seeks to collect it cannot, however, be both a creditor and a debt collector. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (noting that, as to a specific debt, an entity cannot be both a creditor and a debt collector "because those terms are mutually exclusive") (citations omitted). "[A] non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition" is thus considered a debt collector, rather than a creditor, for purposes of the FDCPA analysis. *Id.* at 362.

Defendants have argued that PRA is "both a 'debt collector' and a 'creditor' under the FDCPA" and that, pursuant to 15 U.S.C. § 1692a(6), Gray, an employee of the creditor attempting to collect debts for the creditor, could not be a debt collector.[8] (Doc. 39 at 10 n.4). However, PRA cannot be both a debt collector and a creditor of Plaintiff's alleged account. Because Defendant PRA was a non-originating debt holder that acquired the disputed debt in default, PRA must be a "debt collector" of Plaintiff's alleged account, rather than a creditor.

---
[8] The Court notes that, in its Motion for Summary Judgment, Defendant M&E has not disputed that it is a debt collector subject to the requirements of the FDCPA.

In turn, Gray cannot be an employee of a creditor who is exempt from liability under § 1692a(6). An employee of a corporate debt collector may be subject to individual liability for violations of the FDCPA if there is proof that the individual herself was a "debt collector" under the statute. *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437-38 (6th Cir. 2008). In this case, Gray was employed by PRA and her work required her to engage in collecting debts that were due another; this include Gray's submission of an affidavit attempting to collect the debt allegedly owed to her employer by Plaintiff. Gray's affidavit also stated that the communication was "from a debt collector." (Doc. 1-1 at 2). The Court accordingly finds that the record contains sufficient proof that Gray was a debt collector subject to individual liability under the FDCPA.

Because the Court has determined that the obligation in question constitutes a "debt" and that all Defendants are "debt collectors," the Court must now determine whether genuine issues of material fact exist as to whether Defendants failed to comply with the provisions of the FDCPA. Plaintiff complains that Defendants violated § 1692e(2)(A), (5), (8), (10), (11), § 1692f(1), and § 1692g(a). (Doc. 1 at 6-16). Those provisions respectively prohibit debt collectors from: falsely representing "the character, amount, or legal status of any debt,"; threatening to take action that cannot legally be taken or that the debt collector does not intend to take; "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed"; using "any false representation or deceptive means to collect or attempt to collect any debt . . ."; failing to disclose in "the initial written communication" with the consumer – which excludes "formal pleadings made in connection with a legal action" –

11

"that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose"; collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"; and failing to send the consumer a written notice containing specific information about the debt, including the amount, the name of the creditor, and the period in which the consumer can dispute the debt within five days of the initial communication with the consumer. *See* 15 U.S.C. § 1692e(2), (5), (7), (8), (10), (11), § 1692f, § 1692g(a).

First, the Court finds that Plaintiff failed to present any evidence suggesting that Defendants falsely represented the character amount or legal status of the debt, made any false representations in attempting to collect the debt, or communicated any information that it knew or should have known to be false. Defendants presented evidence that PRA purchased the defaulted credit account that was opened using Plaintiff's name and personal information and subsequently filed a civil warrant for the amount showing due on the account based on the account information obtained from Capital One – specifically, $1,057.58. Plaintiff soon after disputed the debt. Plaintiff concedes that she did not dispute the debt at any earlier time, as she did not know that the credit card account existed until she received the civil warrant filed by Defendants. Plaintiff also admits that she never reported that her personal information had been stolen in 2004. Thus, although Plaintiff now contends that she never opened the account and that Defendants falsely represented the nature and status of the debt, she has failed to present any evidence Defendants had or should have had knowledge that Plaintiff did not owe the debt. Thus, the Court finds that Plaintiff has failed to establish

12

that a genuine issue of material fact remains as to whether Defendants made any false representations regarding the debt in violation of § 1692e(2)(A), (8), (10) of the FDCPA.

The Court also finds that Plaintiff has failed to present any evidence to support her claim that Defendants threatened to take action that could not legally be taken or that the debt collector did not intend to take. Plaintiff concedes that "Defendants may have had sufficient evidence to file the collection lawsuit," but then, citing to her Complaint, she concludes that "the action of dismissing the lawsuit after Plaintiff filed her sworn denial without attempting to provide any evidence to the state court at that time, and still, over two years later, being unable to provide a copy of the contract on which they allegedly relied to file the collection lawsuit proves Plaintiff's allegations that Defendant intentionally filed the lawsuit knowing they did not have the means and did not intend to obtain the means of proving the alleged debt." (Doc. 51 at 14).

PRA purchased the interest in a defaulted debt accrued using Plaintiff's personal information and filed a legal civil warrant in state court seeking recovery of the amount of default. After Plaintiff disputed the debt, PRA dismissed the action. Plaintiff has, in this instance, merely relied upon her pleadings and has drawn inferences that are not based upon any record evidence to conclude that Defendants' action of dismissing the lawsuit demonstrates that they had no intention of pursuing the collection action against Plaintiff in Tennessee state court. However, Plaintiff has failed to provide any evidence that Defendants were required to provide such evidence to the state court, or that they failed to do so upon request of the state court or the Plaintiff at any time thereafter. And even if Defendants had failed to take such actions as required or as requested, Plaintiff has offered no evidence regarding the intentionality of Defendants' actions. The Court notes that its obligation to draw all reasonable inferences in

13

Plaintiff's favor does not require to Court to give credence to Plaintiff's inferences from unsupported factual assertions. The Court finds that the facts contained in the record do not support Plaintiff's inference – namely, that the dismissal of the lawsuit some seven months after it was filed in and of itself demonstrates that Defendants never intended to pursue the action. Accordingly, the Court finds that Plaintiff has failed to establish that a genuine issue of material fact exists as to whether Defendants violated § 1692e(5) of the FDCPA.

The Court also finds that Plaintiff has failed to meet her burden of demonstrating disputed issues of law or fact as to whether Defendants violated § 1692f(1) – that is, whether they attempted to collect an amount, including interest that was not expressly authorized by the agreement creating the debt or permitted by law. Plaintiff argues that Defendants failed to produce a copy of the contract creating the debt, and thus could not support their request for ten percent interest in the civil warrant. However, Plaintiff fails to acknowledge that, at the time the action against her was commenced in state court, Tennessee law provided that "[i]nterest on judgments . . . shall be computed at the effective rate of ten percent (10%) per annum . . . ." Tenn. Code Ann. § 47-14-121 (2011). Plaintiff's argument that this request was nonetheless misleading under the least sophisticated consumer analysis is unavailing, and the Court finds that Plaintiff has failed to show that Defendants violated § 1692f(1).

Plaintiff's remaining allegations depend upon whether the civil warrant and attached affidavit filed in Tennessee General Sessions Court constitute an "initial communication" with the debtor under the FDCPA. Section 1692e(11) makes it a violation for a debt collector to fail to disclose in "the initial written communication" with the consumer that the debt collector is attempting to collect a debt and that any

14

information obtained will be used for that purpose; however, "formal pleadings made in connection with a legal action" are exempted from classification as initial communications. 15 U.S.C. § 1692e(11).

Defendants rely upon *Schnitzspahn v. F.A.B., Inc.*, 21 F. Supp. 2d 781 (W.D. Tenn. 1997), in support of their argument that a civil warrant constitutes a formal pleading for FDCPA purposes. In discussing whether a civil warrant filed in Tennessee General Sessions Court on May 14, 1996 violated § 1692e(11) of the FDCPA, the court noted that "effective, December 30, 1996, § 1692e(11) is no longer applicable to formal pleadings made in connections with legal actions." *Id.* at 784 n.1. Thus, by suggesting that the civil warrant in question would "no longer" be subject to § 1692e(11) had it been filed after the relevant amendment, *Schnitzspahn* indicates that a civil warrant filed in Tennessee General Sessions Court may constitute a formal pleading.

However, several cases from Tennessee courts support Plaintiff's position that a civil warrant filed in General Sessions Court does not constitute a formal pleading. *See, e.g.*, *Nicholson v. Lester Hubbard Realtors*, 2010 WL 4244135, at *3 (Tenn. Ct. App. Oct. 28, 2010) ("Because Plaintiff's civil warrant merely alleged that Defendants were being sued for negligence and violation of the Consumer Protection Act . . . we find no error in the trial court's decision to require Plaintiff to file a formal complaint[.]") (internal quotation marks omitted); *Outpatient Diagnostic Ctr v. Christian*, 1997 WL 210842, at *2 (Tenn. Ct. App. Apr. 30, 1997) ("The appellate record contains unauthenticated photocopies of [Plaintiff's] civil warrant and the parties' briefs filed in general sessions court; however, it presently contains no pleadings"). The Court finds these cases from Tennessee's state courts persuasive and finds that a civil warrant and

15

any attached materials are not "formal pleadings" exempt from classification as initial communications under § 1692e(11).

Nonetheless, Plaintiff has failed to establish that Defendants violated § 1692e(2)(11). In her Complaint, Plaintiff alleges that Gray's Affidavit "failed to disclose . . . that they are attempting to collect a debt and that any information obtained will be used for that purpose . . . ." (Doc. 1 at 15). However, the copy of Gray's Affidavit that Plaintiff attached to her Complaint contains the required disclosure, stating, "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (Doc. 1-1 at 2). Thus, this allegation in Plaintiff's Complaint is expressly contradicted by the attachment thereto, and the evidence shows that Defendants did not violate the disclosure provision of § 1692e(11).

Finally, it is undisputed that, as to Plaintiff's sole remaining FDCPA claim, Defendants did not send Plaintiff a written notice within five days of their initial communication with Plaintiff as required by § 1692g(a) of the FDCPA. Thus, it appears that Defendants violated this provision of the FDCPA. It does not appear to the Court that a trial is necessary to resolve the issue of liability, as no disputed issues of fact or law preclude the Court from granting judgment in favor of Plaintiff. However, Plaintiff has not filed her own Motion for Summary Judgment. Accordingly, the parties are hereby **ON NOTICE** that the Court intends to grant summary judgment for a nonmovant pursuant to Fed. R. Civ. P. 56(f)(1).

In the event that the parties wish to respond, the parties' responsive briefs must be filed **no later than June 28, 2013**. The parties' briefs shall not exceed ten (10) pages in length, and should otherwise conform to the briefing requirements provided in

the Local Rules for this District.[9] The parties' briefs, should they wish to file them, should state why they believe that this Court should or should not grant summary judgment for the Plaintiff based on the grounds stated in this Order. The parties' briefs should also address the appropriate measure and extent of actual and statutory damages for the violation identified by the Court; Plaintiff shall support her argument that she is entitled to actual, rather than statutory damages, with evidence.[10] Each party may respond to the brief filed by the opposing party **no later than July 5, 2013**. The parties' response briefs shall not exceed five (5) pages in length. No reply briefs will be permitted.

In light of the Court's Order, the dates for the final pretrial conference and jury trial – currently set for June 10 and 25, 2013, respectively – will be **CANCELLED**; accordingly, Plaintiff's Motion to Reschedule Trial Date (Doc. 61) will be **DENIED AS MOOT**.

---

[9] In light of the virtually identical Motions for Summary Judgment filed by the Defendants in this action, the Court asks Defendants, to the extent practical, to file a consolidated brief (and consolidated response to Plaintiffs' brief) in conformance with the judicial preferences with the undersigned, available at http://tned.uscourts.gov/preferences_mattice.php.

[10] The Court notes that it believes that Defendants' violation was trivial, as much of the information required by the § 1692g(a) notice was included in the civil warrant and attached affidavit. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 1620-21 (2010) ("When an alleged violation is trivial, the 'actual damage[s]' sustained, § 1692k(a)(1), will likely be *de minimis* or even zero."). The Court also believes that the violation was based on Defendants' good-faith mistake of law that a civil warrant was a "formal pleading" that would not constitute an initial communication that triggered the § 1692g(a) notice requirement. Although a mistake of law will not constitute a "bona fide error" to exempt a debt collector from liability under § 1692k(c) of the FDCPA, a court may consider whether noncompliance was intentional in assessing statutory damages under § 1692k(b) and may accordingly "adjust statutory damages for a good-faith misinterpretation of law, even where a debt collector is not entitled to the categorical protection of the bona fide error defense." *Id.* at 1619. The Court notes that it has serious doubts as to the extent of recovery that Plaintiff may be entitled to. It is thus imperative that Plaintiff support her argument regarding damages with specific and competent evidence for the Court's consideration. In light of this Order, the Court also encourages the parties to discuss the possibility of settlement.

17

Accordingly:

- Plaintiff's Motions for Extension of Time (Doc. 45, 47, 49, 50) are hereby **GRANTED**;

- Defendants' Motions for Summary Judgment (Docs. 38, 40) are hereby **DENIED**;

- The parties are **ON NOTICE** that the Court intends to grant summary judgment for a nonmovant, pursuant to Fed. R. Civ. P. 56(f)(1);

- In the event that the parties wish to file responses to this Order, the briefs for both parties **SHALL** be filed **no later than Friday, June, 28, 2013**. Such briefs **shall not exceed ten (10) pages**. Response briefs, if necessary, **SHALL** be filed **no later than Friday, July 5, 2013** and **shall not exceed five (5) pages**. All briefs must otherwise comply with the Local Rules for the United States District Court for the Eastern District of Tennessee;

- The dates for the final pretrial conference and jury trial – currently set for June 10 and 25, 2013, respectively – are hereby **CANCELLED** in light of this Order.

- Plaintiff's Motion to Reschedule Trial Date (Doc. 61) is hereby **DENIED AS MOOT**.

**SO ORDERED** this 7th day of June, 2013.

                                                ____/s/   *Harry S. Mattice, Jr.*_____
                                                    HARRY S. MATTICE, JR.
                                                  UNITED STATES DISTRICT JUDGE